# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **MARY M. GONDA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 12-1772 (RMC)** |
| | ) | |
| **PATRICK R. DONAHOE,** | ) | |
| **Postmaster General,** | ) | |
| **U.S. POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## OPINION

Fired at the end of her probationary period with the United States Postal Service (USPS), Mary Gonda, a white female in her fifties, alleges that USPS discriminated against her on the basis of race, sex and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a and retaliated against her in violation of Title VII.  In addition, Ms. Gonda alleges that USPS improperly categorized her as an exempt employee under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*, and owes her wages for unpaid overtime.  USPS moves for summary judgment, contending that Ms. Gonda has failed to make out a *prima facie* case of discrimination or retaliation and has not rebutted its legitimate, nondiscriminatory and non-retaliatory reasons for her poor performance evaluation and termination.  Further, USPS argues that, as a senior analyst earning an annual salary of $99,000, Ms. Gonda was properly classified as exempt under the FLSA.  For the reasons stated below, USPS's motion for summary judgment will be granted in part and denied in part.

## I.   FACTS

### A.  Ms. Gonda's Employment at USPS

Mary Gonda, a Caucasian woman, worked in the Organizational Effectiveness (OE) unit for USPS from July 2010 until January 2011.  Ms. Gonda was hired by Elizabeth Hepner, a Hispanic woman and OE's manager, after Ms. Gonda interviewed with Ms. Hepner and Jacqueline Manz, a Caucasian woman who became Ms. Gonda's supervisor and team lead. When Ms. Gonda was hired, she was 57 years old, Ms. Hepner was 50 years old, and Ms. Manz was 47 years old.  Neither Ms. Manz nor Ms. Hepner asked Ms. Gonda her age at the interview; each states that she never subsequently learned Ms. Gonda's age.  Mot. for Summ. J. [Dkt. 16], Ex. 1, Hepner Decl. ¶¶ 10, 18; *id.*, Ex. 1, Manz Decl. ¶ 2.

Ms. Gonda was hired as a grade level 23 senior organization classification and management analyst in the OE and began employment on a 180-day probationary basis.  Her position paid an annual salary of $99,000 and was classified as exempt from the FLSA.  The OE is part of the Employee Resource Management division within USPS headquarters and

> reviews and evaluates proposed organizational changes and restructurings within USPS functional groups, assesses established structures and staffing to ensure that the allocation of approved positions and assignment of personnel reflect the most effective use of human resources, and evaluates existing and proposed positions to determine the grade level, qualifications standards, and whether it advances organizational objectives.

Hepner Decl. ¶¶ 1-2.   To carry out this work, OE analysts

> assess the continuity in organizational structures throughout USPS, identify the informal organization and compare it to the formal structure, evaluate staff interaction, determine if structural or staffing decisions leave essential work inadequately supported, and assess the effectiveness of approved staffing and structure.  In reviewing existing and proposed positions, OE analysts identify position duties and responsibilities necessary to achieve organizational effectiveness, revise or develop new job

> descriptions and qualification standards as appropriate, and
> evaluate and assign the appropriate grade level to a position.

*Id.* ¶ 3. Although she was employed as an OE analyst, Ms. Gonda testified that her day-to-day work consisted of menial tasks such as data entry that did not involve discretion or independent decision-making. *See* Opp'n [Dkt. 17], Ex. 10 Gonda D.D.C. Dep. at 80-81, 86-87, 105-106, 167-168. She regularly worked more than 40 hours a week.

    As a probationary employee, Ms. Gonda received progress evaluations from Ms. Manz, her team lead, at the 30-, 80-, and 150-day marks in the probationary period. USPS probationary employees can be terminated for inadequate performance at any point during the probationary period. Ms. Gonda received her first evaluation from Ms. Manz on August 12, 2010, approximately 30 days into her employment. Of the eight competency areas targeted for evaluation, Ms. Gonda was only evaluated in three because Ms. Manz did not have enough time to observe Ms. Gonda in all aspects of her work. *Id.*; Mot. for Summ. J., Ex. 6 Probationary Period Report. Ms. Manz determined that Ms. Gonda met expectations in the three assessed categories.[1] *Id.*

    During a group meeting in August 2010, Ms. Gonda tried to say something after Abbott Hilelson, a male team lead, spoke. He interrupted her by touching her on the leg and saying, "Let me finish, Bubula."[2] Mot. for Summ. J., Ex. 2, Gonda EEOC Testimony at 36. Ms. Gonda was aware that "Bubula" is a Yiddish term of endearment and she did not believe that Mr. Hilelson was behaving in a sexual manner towards her. Gonda D.D.C. Dep. at 110-11. Rather,

---

[1] Ms. Manz stated that she evaluated Ms. Gonda in two areas of competency whereas the Probationary Period Report shows that Ms. Manz evaluated Ms. Gonda in three areas. *Compare* Manz Decl. ¶ 4 *and* Probationary Period Report. This discrepancy is not material.

[2] In her EEO Complaint, Ms. Gonda alleges: "I was patted on the leg by Abbott Hilelson on August 13, 2010 and he called me 'Bubbeleh.' Literal translation from Yiddish is 'little Grandmother.'" Mot. for Summ. J., Ex. 7.

she believed "it was a gender thing," and that Mr. Hilelson intended to put her in her place "because [she] was an old lady and [she] needed to quit talking."  *Id*.; *but see* Compl. ¶ 22 ("Ms. Gonda complained about the actions by Mr. Hilelson, which she considered gender-based harassment, to Jacqueline Manz, a team leader.").  Shortly thereafter, Ms. Gonda made complaints about Gary Oliver, another male OE team lead, to Ms. Manz.  She believed that Mr. Oliver assigned inappropriate work to women in the office, treated her like his administrative assistant, and was rude and insulting.  *Id*. at 36.  At Ms. Manz's encouragement, Ms. Gonda arranged a meeting with Ms. Hepner to discuss her concerns.  *Id*. at 40.  Although Ms. Hepner "doe[s] not recall Ms. Gonda raising any issue of discrimination or disparate treatment by Mr. Oliver," Ms. Hepner did later meet with Mr. Oliver to counsel him about his communication style.  Hepner Decl. ¶ 25.

On September 30, 2010, Ms. Gonda received her 80-day progress evaluation from Ms. Manz.  Manz Decl. ¶ 5; Probationary Period Report.  At that time, Ms. Manz found that Ms. Gonda met expectations in four categories and needed improvement in two others.  *Id*.  According to Ms. Manz,

> Ms. Gonda was struggling to become proficient with the Human Capital Enterprise System (HCES), which was the electronic database used by OE for its reorganization and job classification work.  As a result, Ms. Gonda was having trouble delivering timely and accurate work product. . . . I noted to [Ms. Gonda] that she needed to improve her performance with respect to decision-making and producing timely and accurate work.  I also noted that she was meeting expectations of an OE analyst in other competencies, and that I expected her performance to improve as she continued in her probationary period.

Manz Decl. ¶¶ 5-7.  During work on a post office restructuring project, Ms. Gonda made an error that "can be quite disruptive" to a particular post office location and its employees.[3]  *Id.* ¶ 6. Because she did not consult with the OE analyst coordinating the project or check appropriate data systems, Ms. Gonda incorrectly believed that there was a discrepancy in the number of positions authorized for a particular post office.  *Id.*  If an employee's position is no longer authorized and is removed from the Human Capital Enterprise System, "it could take as long as six weeks to get the employee re-established in the system and paid again."  *Id.*

On November 9, 2010, Ms. Gonda and other OE staff attended a meeting with Ms. Hepner to discuss the results of a workplace survey conducted by USPS.  The team leads were not present at the meeting.  Ms. Gonda and several other employees raised concerns, such as not having adequate supplies to do their jobs, being micromanaged by their team leads, and being assigned data entry work.  Ms. Gonda mentioned that Mr. Hilelson had patted her on the leg and called her "Bubula."  Ms. Gonda and other women complained that Mr. Oliver assigned menial tasks to female employees but not to male employees.[4]  OE analysts other than Ms. Gonda were highly critical of Mr. Hilelson and Mr. Oliver at the meeting.  Within a few days, Ms. Hepner met with Ms. Manz, Mr. Oliver and another team lead to discuss the employee feedback, but she did not attribute the comments to any particular employee.  Hepner Decl. ¶ 27; Manz Decl. ¶ 14.  Ms. Gonda believes that the team leads learned the origin of the criticisms because "the whole tone of the way people interacted with me, the team leaders changed drastically after that meeting."  Opp'n, Ex. 8 Gonda EEOC Dep. at 157-58.

---

[3] It is unclear from the record when Ms. Gonda made this error.

[4] Ms. Gonda testified that Mr. Oliver assigned her administrative work, such as putting together spreadsheets, and asked her to make phone calls on his behalf.  Mot. for Summ. J., Ex. 2 Gonda EEOC Testimony at 125.

On or around December 9, 2010, Ms. Manz met with Ms. Hepner to discuss Ms. Gonda's performance and whether she should be retained beyond her probationary period. Ms. Manz believed that Ms. Gonda's performance had not improved since her September performance review, "but instead declined relative to what would be expected of a senior analyst." Manz Decl. ¶ 8. Ms. Gonda "would fail to provide work product in the appropriate format" and "turned in incomplete work product." *Id.* ¶¶ 8, 9. Moreover, Ms. Manz "did not see any overt effort by Ms. Gonda to improve." *Id.* ¶ 12. For these reasons, Ms. Manz recommended that USPS terminate Ms. Gonda's employment. *Id.* ¶ 12. Ms. Hepner had developed similar impressions of Ms. Gonda's work based on her own observations and feedback from colleagues. Hepner Decl. ¶¶ 14, 16, 18. She agreed that Ms. Gonda should not be retained beyond her probationary period. *Id.* ¶ 18.

Until the Employee & Labor Relations Division of USPS[5] had processed the termination paperwork, OE's practice was not to inform an employee that she would be terminated and to continue with any scheduled progress evaluations. *Id.*; Manz Decl. ¶12. Therefore, Ms. Gonda's 150-day evaluation took place on December 13, 2010. Ms. Manz evaluated Ms. Gonda as needing improvement in six categories and meeting expectations in the remaining two. Probationary Period Report. Ms. Gonda's employment with USPS was terminated on January 3, 2011.

### B. Procedural History

Ms. Gonda exhausted her administrative remedies within USPS and with the Equal Employment Opportunity Commission (EEOC). Following a hearing requested by Ms. Gonda, an EEOC Administrative Judge found in favor of USPS. USPS adopted the

---

[5] Ms. Hepner states that the termination paperwork was processed by USPS's Corporate Personnel Management. Hepner Decl. ¶ 18. This discrepancy is immaterial.

administrative judge's decision and issued a Notice of Final Action on August 30, 2012.  Ms.

Gonda timely filed suit in this Court on November 1, 2012.  Count 1 of the Complaint alleges

retaliation for protected activities in violation of Title VII; Count 2 alleges discrimination on the

basis of race and sex in violation of Title VII; Count 3 alleges discrimination on the basis of age

in violation of the ADEA; and Count 4 alleges violations of FLSA for the failure to pay overtime

compensation. *See* Compl. Dkt. 1, § V. Claims for Relief.  After discovery, USPS filed a motion

for summary judgment, which is now fully briefed.

## II.    LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall

be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly

granted against a party who "after adequate time for discovery and upon motion . . . fails to make

a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor.  *Anderson*, 477 U.S. at 255.  A nonmoving party,

however, must establish more than "the mere existence of a scintilla of evidence" in support of

its position.  *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or

conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  If the evidence

"is merely colorable, or is not significantly probative, summary judgment may be granted."

*Anderson*, 477 U.S. at 249-50 (citations omitted).

District courts use "special caution" when considering summary judgment in employment discrimination or retaliation actions due to "the potential difficulty for a plaintiff . . . to uncover clear proof of discriminatory or retaliatory intent." *Nurriddin v. Bolden,* No. 04–2052, 2014 WL 1648517, at *5 (D.D.C. Apr. 25, 2014) (citation omitted). "Nevertheless, the plaintiff is not relieved of h[er] obligation to support h[er] allegations with competent evidence." *Id*.

## III.   ANALYSIS

Ms. Gonda complains about discrimination due to her race and sex, discrimination due to her age and retaliation for having engaged in protected activities. The Court has carefully reviewed the entire record because claims of employment discrimination often reduce to contradictory witness statements and require a jury's evaluation of credibility. Here, there is *no* cited evidence to support the allegations of race or sex discrimination and only sufficient evidence to support a weak inference of age discrimination. Ms. Gonda has presented a *prima facie* case of retaliation, but the law requires her to prove that "but for" her protected activity, she would not have received a poor performance evaluation or been terminated. *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013). USPS insists that its actions were based on Ms. Gonda's performance problems, which, in significant part, Ms. Gonda admits. While Ms. Gonda seeks to compare her performance to coworkers who were not discharged, their circumstances are not comparable. Ultimately, the allegations of discrimination based on race, sex, age and retaliation fail for want of evidence from which a reasonable jury could find for Ms. Gonda.

In addition, Ms. Gonda argues that her actual job duties entitled her to overtime pay; USPS cites the scope of Ms. Gonda's formal job description. The Court might well agree

that a person working the scope of the job description would be exempt from FLSA, but USPS

has not shown that Ms. Gonda performed tasks that approximated the scope of her job

description.  Because there are material facts in genuine dispute, USPS's motion for summary

judgment on the FLSA allegations (Count 4) will be denied.[6]

### A.  Title VII and the ADEA Discrimination Allegations

Title VII prohibits status-based discrimination, *i.e.*, it prohibits an employer from

discriminating on the basis of race, color, religion, sex, or national origin in hiring decisions, in

compensation, terms, and conditions of employment, and in classifying employees in a way that

would adversely affect their status as employees.  42 U.S.C. § 2000e-2.[7]  The ADEA provides

that "[a]ll personnel actions affecting employees or applicants for employment who are at least

---

[6] The Court has jurisdiction over this case under 28 U.S.C. § 1331 (federal question jurisdiction) because Ms. Gonda brought suit under Title VII and FLSA.  Venue is proper in this district under 42 U.S.C. § 2000(e)-5(f)(3) because the unlawful employment practices alleged were committed in this district.

[7] Section 2000e-2 provides:

> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.  The Supreme Court has distinguished between claims asserting "status-based discrimination" under § 2000e-2 and claims asserting retaliation under § 2000e-3.  *See Nasser*, 133 S. Ct. at 2525 (2013).

40 years of age . . . in the United States Postal Service . . . shall be made free from any discrimination based on age."  29 U.S.C. § 633a(a).

Where, as here, a plaintiff does not offer direct evidence of discrimination and instead points to circumstantial evidence, courts apply the burden-shifting framework set forth in *McDonnell Douglas* to assess claims under Title VII and the ADEA.[8]  *See Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)); *Barnette v. Chertoff*, 453 F.3d 513, 515 (D.C. Cir. 2006).  Under *McDonnell Douglas*, a plaintiff must first establish a *prima facie* case of discrimination by showing (1) that she is a member of a protected class; (2) that she suffered an adverse personnel action; and (3) the unfavorable action gives rise to an inference of discrimination.  *See Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007); *Barnette*, 453 F.3d at 515.  Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the employer's action.  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas*, 411 U.S. at 802.  If the defendant asserts a nondiscriminatory reason for the employment action, the plaintiff has the opportunity to prove "pretext," *i.e.*, "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804; *see also Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003).  The plaintiff retains at all times the burden of "persuading the trier of fact that the defendant intentionally discriminated against the plaintiff." *Burdine*, 450 U.S. at 253.  "She may succeed in this either directly by persuading the court that a

---

[8] Under the ADEA, a federal employee "may also establish liability, though not necessarily entitlement to such remedies as reinstatement and backpay, by showing that age was *a* factor in the challenged personnel action."  *Ford v. Mabus*, 629 F.3d 198, 200 (D.C. Cir. 2010); *cf. Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009) (recovery limited to proof of "but for" discrimination under ADEA in a case with a non-federal plaintiff).

discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id*. at 256.

When an employer articulates a legitimate, non-discriminatory reason for the employment action, "the district court need not—and should not—decide whether plaintiff actually made out a prima facie case under *McDonnell Douglas*." *Brady v. Office of the Sgt. at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008). The district court then immediately proceeds to the ultimate issue of discrimination: "has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee [on a prohibited basis]?" *Id*. In answering this ultimate question, the prima facie case remains relevant, but only as part of the evidence the court considers. *See Jones v. Bernanke*, 557 F.3d 670, 679 (D.C. Cir. 2009). "[T]he court reviews each of the three relevant categories of evidence—prima facie, pretext, and any other —to determine whether they 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination or] retaliation." *Id*. (citing *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002)).

Counts 2 and 3 of the Complaint allege that USPS discriminated against Ms. Gonda because of her race, sex and age when it gave her "an unjustified bad performance evaluation on or about December 13, 2010 and terminat[ed] her employment on or about January 3, 2011." Compl. ¶¶ 124, 132. USPS argues that Ms. Gonda has not raised an inference of race, sex or age discrimination and cannot show that its proffered legitimate nondiscriminatory reasons for her poor performance evaluation and termination were pretextual.

1.   USPS's Proffered Legitimate, Nondiscriminatory Reason

USPS contends that it gave Ms. Gonda a poor evaluation and terminated her

employment because her job performance, as a Level 23 analyst, was unsatisfactory and did not

show improvement during the course of her probationary period.  By her second progress review

on September 30, 2010, approximately 80 days into her employment, Ms. Manz and other OE

supervisors "observed that Ms. Gonda was struggling to become proficient with the Human

Capital Enterprise System (HCES), which was the electronic database used by OE for its

reorganization and job classification work.  As a result Ms. Gonda was having trouble delivering

timely and accurate work product."  Manz Decl. ¶ 5.  Throughout the probationary period, Ms.

Gonda routinely made errors, some of them serious.[9]  Although OE analysts "are instructed on

the correct formats for work product and on the importance of adhering to them so that

functional components receive OE's work product in a clearly stated and easily understood

form," Ms. Gonda submitted work product that was not always correctly formatted.  Hepner

Decl. ¶ 14; Manz. Decl. ¶ 8.[10]  Ms. Gonda also provided incomplete or poor quality first drafts to

---

[9] *See* Manz Decl. ¶¶ 6, 11; Visconti Decl. ¶¶ 3-6 ("Because of the gravity of Ms. Gonda's errors and the additional work that was resulting for me, I periodically informed Jeannette Goldman, my team lead, and Jacqueline Manz, Ms. Gonda's team lead, about them."); Mot. for Summ. J., Ex. 9, 9/30/10 Visconti email (noting insufficient analysis in work product); *id.*, Ex. 11, 11/12/10 Visconti email, 11/22/10 Visconti email & 12/21/10 Visconti email (identifying errors in Ms. Gonda's work product); *id.*, Ex. 14, 12/21/10 Visconti email (explaining she fixed one of Ms. Gonda's reports and instructing Ms. Gonda on follow-up).

[10] *See also* Mot. for Summ. J., Ex. 12, 11/4/10 and 11/5/10 Manz & Oliver email (identifying formatting deficiencies in report prepared by Ms. Gonda), 10/27/10 Manz email (asking Ms. Gonda to "clean up" formatting on report to be sent to internal customer).

her supervisors, even though she was expected to deliver high quality work for review the first time around.[11]

Poor work performance is a legitimate reason for terminating an employee. *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (noting that "performance below the employer's legitimate expectations" is one of the two "most common" "legitimate reasons for discharge"); *Kelly v. Mills*, 677 F. Supp. 2d 206, 224 (D.D.C. 2010) *aff'd*, No. 10-5049, 2010 WL 5110238 (D.C. Cir. Dec. 14, 2010) ("poor and deteriorating job performance" is a legitimate, non-discriminatory reason for firing plaintiff).

Because USPS has asserted legitimate, nondiscriminatory reasons for Ms. Gonda's poor performance evaluation and termination, the question is whether Ms. Gonda has raised a genuine issue of material fact that USPS's legitimate, nondiscriminatory reason was pretextual and, in fact, it was motivated by race, sex or age discrimination. *See Brady*, 520 F.3d. at 494.[12]  In considering this ultimate question, the Court considers all the evidence to determine if a reasonable jury could infer discrimination. *See Jones*, 557 F.3d at 679.

---

[11] *See* Hepner Decl. ¶ 16; Mot. for Summ. J., Ex. 13, 11/22/10 Gonda email (asking Ms. Hepner to disregard earlier submitted work product because she needed to "fine-tune it before it is ready for use"), 12/21/10 Gonda email (asking Ms. Visconti not to review a report because she "need[ed] to review it and make some corrections because the numbers are off"); *Id*., Ex. 2 Goldman EEOC testimony at 422-23 (testifying she "often" had to revise Ms. Gonda's work because it appeared Ms. Gonda misunderstood assignments or failed to verify the accuracy of her work product).

[12] The Court thus bypasses USPS's argument that Ms. Gonda failed to make out a prima facie case of discrimination. *See George v. Leavitt*, 407 F.3d 405 (D.C. Cir. 2005) ("[W]e need not address the [defendant]'s contentions that [plaintiff] failed to make out a prima facie case. Instead, we proceed to "the ultimate question of discrimination *vel non*.") (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

2. <u>Ms. Gonda's Claims</u>

a. Count 2: Sex Discrimination

As USPS correctly notes in its Reply, Ms. Gonda does not address any of USPS's arguments regarding her sex discrimination claim.  By failing to address USPS's arguments on this claim, Ms. Gonda has conceded this claim.  *See Day v. Dist. Of Columbia Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.").  The sex discrimination allegation will be dismissed.

b. Count 2: Race Discrimination

When a race discrimination claim is made by a white person, who is not a member of a traditionally disadvantaged group, some adjustment to the "basic allocation of burdens and order of presentation of proof" is needed.  *Lanphear v. Prokop*, 703 F.2d 1311, 1314–15 (D.C. Cir. 1983).  A white plaintiff must "show additional 'background circumstances [that] support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993) (quoting *Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1017 (D.C. Cir. 1981)).  A satisfactory showing could include evidence that the "particular employer at issue has some reason or inclination to discriminate invidiously against whites . . . or evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." *Id*.

USPS argues that there is no evidence that USPS is the "unusual employer who discriminates invidiously against its white employees" or that there is anything "fishy" about Ms. Gonda's performance review or subsequent termination.  Mot. for Summ. J. at 10.  USPS notes that "Caucasian employees constitute nearly 65% of USPS's workforce; more than three times

the size of the next largest racial group of employees." *Id.*  As a probationary employee, Ms.

Gonda received progress evaluations at prescribed intervals, two of which indicated that she

needed improvement in certain areas and could be terminated at any time for performance

reasons.

Ms. Gonda's race discrimination claim faces a significant hurdle because Mses.

Hepner and Manz hired Ms. Gonda within six months of firing her.  If Mses. Hepner and Manz

did not want to work with Ms. Gonda on account of her race, "it would be odd to select her and

then immediately start ginning up reasons to dismiss her." *Vatel v. Alliance of Auto. Mfrs.*, 627

F.3d 1245, 1247 (D.C. Cir. 2011).  *See also Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d

Cir. 1997) ("[W]hen the person who made the decision to fire was the same person who made

the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be

inconsistent with the decision to hire," especially "when the firing has occurred only a short time

after the hiring.").  The fact that Mses. Hepner and Manz hired Ms. Gonda is probative evidence

that they did not discriminate against her on account of her race when they fired her within six

months. *Vatel*, 627 F.3d at 1247.  Furthermore, although Ms. Hepner (Hispanic) concurred with

the recommendation of Ms. Manz (Caucasian) to terminate Ms. Gonda (Caucasian) and prepared

her termination letter, the "mere difference in race between [a] supervisor[] and an employee,

without more, cannot support an inference of intentional discrimination."  *Morris v. Jackson*, No.

CV 11-701 (RMC), 2014 WL 552480, at *7 (D.D.C. Feb. 12, 2014).  Ms. Gonda has proffered

no evidence of discriminatory animus by Ms. Hepner on account of Ms. Gonda's race.  Nor has

she provided any evidence of additional background circumstances suggesting USPS

discriminates against white employees. *Harding*, 9 F.3d at 153.  Based on the entire record, the

Court finds a complete absence of evidence from which a reasonable jury could infer

discrimination on the basis of Ms. Gonda's race.  USPS's motion for summary judgment on

Count 2 will be granted.

### c.   Count 3: Age Discrimination

Ms. Gonda's age discrimination claim faces a similar initial hurdle as her race

claim.  Not only did Mses. Hepner and Manz hire and fire Ms. Gonda, but both women are also

over 40 years old and in the same ADEA-protected class as Ms. Gonda.  *See Grady*, 130 F.3d at

560; *see also Perry v. Shinseki*, 783  F. Supp. 2d 125, 138 (D.D.C. 2011) (noting that the fact

that supervisor was over 40 years old and a member of the same protected class as plaintiff

"weighs further against any inference of discrimination").  Neither was aware of Ms. Gonda's

age at the time of the decision to hire or terminate her.[13]  Hepner Decl. ¶¶ 10, 18; Manz Decl.

¶ 2.

To support her claim, Ms. Gonda alleges that Ms. Hepner favored younger

employees, engaged in a pattern of age discrimination,[14] and made an age-related comment.  Ms.

Gonda believes that Ms. Hepner "preferred" younger female employees because she

"surround[ed] herself constantly, on a daily basis, with the younger women who worked in the

office" and "the people who did the most fawning over her were the ones that were treated the

---

[13] At deposition, Ms. Gonda confirmed that she never discussed her age with Ms. Hepner or her team leads and that no one ever asked her about her age.  Gonda D.D.C. Dep. at 78.  She speculates that Ms. Hepner and Ms. Manz could have learned her age by accessing her personnel file.  *Id*. at 171, 176.  In the face of sworn testimony by Mses. Hepner and Manz that they did not know Ms. Gonda's age, Ms. Gonda's unsupported speculations do not create a factual dispute.  Ms. Gonda "must rely on evidence in the record, not h[er] speculation as to what could have transpired."  *Walker v. England*, 590 F. Supp. 2d 113, 148 (D.D.C. 2008).

[14] Ms. Gonda points to the fact that Ms. Hepner terminated two other older probationary employees (aged 49 and 52), but does not dispute that they were terminated for unsatisfactory work performance.  *See* Hepner Decl. ¶ 19 ("Ms. Carlyle and Ms. Cohen were also terminated at around the same time as Ms. Gonda for failing to adequately perform their job duties. . . .  In each instance, the termination decision was made in consultation with the respective team leads, each of whom recommended termination.").

best." Gonda EEOC Dep. at 37, 44.  Ms. Gonda perceived that Ms. Hepner viewed younger

employees as being more computer savvy because Ms. Hepner "use[d] certain ones more like her

confidantes."  *Id.* at 43.  USPS responds that Ms. Gonda was similarly recognized as adept at

Microsoft Excel by her supervisors and was asked to tutor her co-workers on it.

      Ms. Gonda provides no useful evidence in aid of her claim that there was a pattern

of age discrimination.  She relies on the Declaration of Eric Smallwood, Dkt. 17-1, for evidence

of age discrimination.  Mr. Smallwood provides information about his beliefs and personal

opinions, *id.* ¶¶ 4-7, 9, 13, 14, 16, 17, but does not substantiate them with evidence that weighs

against USPS's legitimate non-discriminatory reasons for Ms. Gonda's performance review and

termination.  *Faherty v. Lockhart*, 751 F. Supp. 994, 1006 (D.D.C. 1990) (finding that anecdotal

testimony of four employees who believed they were mistreated did not support plaintiff's

claims for pattern or practice of discrimination), *aff'd*, 948 F.2d 781 (D.C. Cir. 1991); *Robinson

v. Red Coats, Inc.*, Civ. No. 11-2212, 2014 WL 1244732, at *7 (D.D.C. Mar. 27, 2014)

("[C]onclusory allegations of discriminatory animus lacking any factual basis in the record are

insufficient to defeat summary judgment.").

      Ms. Gonda further cites Valentina Lara, aged 42 (fourteen years Ms. Gonda's

junior), who allegedly made mistakes and was not fired.  *See McNally v. Norton*, 498 F. Supp. 2d

167, 181 (D.D.C. 2007) (citing *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 313

(1996)) (finding that an "inference of age discrimination can be drawn when a plaintiff is treated

less favorably than a person who is 'significantly' younger.").  As did Mr. Smallwood, Ms. Lara

submitted a declaration that expressed her beliefs and personal opinions, without factual

substantiation.  *See* Opp'n, Ex. 2 Lara Decl. ¶¶ 4, 5, 6, 7.  Ms. Gonda and Ms. Lara favorably

compared their performances to each other.  *Id.* ¶ 7 ("I believe that Ms. Gonda's performance

was a good as mine."); Gonda EEOC Dep. at 135 ("I would say objectively that I don't believe

that Valentina Lara performed any better than I did.").  Neither Ms. Lara's personal beliefs nor

Ms. Lara's and Ms. Gonda's favorable impressions of each other constitute more than anecdotal

and conclusory statements and are insufficient to support Ms. Gonda's claims.  *See Greene*, 164

F.3d at 675.

             Finally, Ms. Gonda argues that a single comment made to her by Ms. Hepner in

December is evidence of age discrimination.  Ms. Gonda testified that Ms. Hepner told her, "that

when I came to work there she expected me to hit the ground running."  Gonda D.D.C. Dep. at

112.  Ms. Gonda argues that the context in which Ms. Hepner made this comment suggests her

preference for younger employees.  While a facially neutral phrase may be evidence of

discrimination, "depend[ing] on various factors including context, inflection, tone of voice, local

custom, and historical usage," *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456 (2006) (per curiam),

"[i]t is the plaintiff's burden to provide evidence beyond his or her own subjective assertions of

discrimination suggesting that a facially neutral term or phrase was, in fact, discriminatory,"

*Robertson v. Dodaro*, 767 F. Supp. 2d 185, 194 (D.D.C. 2011) (citing *Ash*, 546 U.S. at 456).

The quoted language was facially neutral without reference to age.  Ms. Gonda's description of

the rest of the conversation adds no more.  She testified that Ms. Hepner also said "that she

expected anyone coming to work for her to be knowledgeable of USPS practices, and

knowledgeable of HR law and said that I wasn't knowledgeable in any area."  Gonda EEOC

Dep. at 35-36.  Not only is there nothing implicitly or explicitly ageist about Ms. Hepner's

comment, but the context suggests that Ms. Hepner was advising that Ms. Gonda—an

experienced senior management analyst earning $99,000 annually—would have to gain the

requisite knowledge quickly to become proficient at her job.  Again, this neutral comment does

not support an inference of age discrimination.  *See Gold v. Gensler*, 840 F. Supp. 2d 58, 68

(D.D.C. 2012) (finding no inference of age discrimination in employer's note that younger

applicant would bring "fresh perspective and new energy" to job).

### 3.   Validity of USPS's Legitimate, Non-Discriminatory Reason

"[O]ne way for a plaintiff to show that an adverse employment decision was

made for a discriminatory reasons is to 'show[] that the nondiscriminatory explanation the

defendant proffered for its decision was false.'"  *Czekalski v. Peters*, 475 F.3d 360 (D.C. Cir.

2007) (citing *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003)).  In "appropriate

circumstances, the trier of fact can reasonably infer from the falsity of the explanation that

employer is dissembling to cover up a discriminatory purpose."  *Reeves v. Sanderson Plumbing

Products, Inc.*, 530 U.S. 133, 147 (2000).

Ms. Gonda disputes USPS's contention that her work performance was

unsatisfactory, but the record is otherwise.  Ms. Gonda has acknowledged that she made errors

and admitted that she lacked confidence in using the database entry system that was essential to

her daily work.[15]  In her EEOC deposition, Ms. Gonda testified that her work was submitted on a

timely basis, but also admitted that she asked for extensions when she could not turn something

in on time.  Gonda EEOC Dep. at 152.  Ms. Gonda's own testimony substantiated the criticism

that she was not detail-oriented: "That was because sometimes I would turn in the work and

maybe it was the wrong font or maybe the page was folded and it shouldn't have been, pages

---

[15] *See* Gonda EEOC Testimony at 159; Gonda EEOC Dep at 63 ("I had put the wrong date in for
a position to be ended, and so, sometimes I'd have to go back and fix something . . . it made me
nervous.  I wasn't confident in using that system, as somebody who had worked there longer.");
Mot. for Summ. J., Ex. 11, 11/15/10 Gonda email (thanking Ms. Visconti for feedback because
she "was afraid there were [sic] going to be an error with this one); *id.*, Ex. 12, 11/15/10 Gonda
email (apologizing for an error).

dog-eared or maybe the margins were too wide on the page." Gonda EEOC Testimony at 61.

When asked if her work were of high quality or low quality, Ms. Gonda testified that, "I felt like I couldn't do the high quality work that I wanted to because I kept having to attend to menial things." *Id.* at 63.

The record includes evidence that Ms. Gonda occasionally received praise for her work.[16] *See* Mot. for Summ. J., Ex. 23. Instances of positive feedback do not suggest pretext given the substantial evidence that her superiors were dissatisfied with her work performance and her failure to improve. The record includes affidavits from three of Ms. Gonda's former co-workers who opined that Ms. Gonda's work performance was satisfactory.[17] The record contains significant evidence to the contrary, and coworkers' beliefs about a plaintiff's work performance are anecdotal opinions without weight. The perception of the decision-maker—i.e., USPS—is relevant to determining pretext, not coworkers. *See Waterhouse*, 124 F. Supp. 2d at 7 ("Plaintiff cannot establish pretext simply based on her own subjective assessment of her own performance, for plaintiff's perception of [her]self, and of [her] work performance, is not relevant. It is the perception of the decisionmaker which is relevant.") (alterations in original) (internal quotation marks and citation omitted), *aff'd*, 298 F.3d 989 (D.C. Cir. 2002); *Robertson v. Dodaro*, 767     F. Supp. 2d 185, 192 (D.D.C. 2011) ("[A]n employee's subjective assessment of her own performance is insufficient to establish such pretext evidence."). Mr. Smallwood,

---

[16] Ms. Manz stated that she complimented Ms. Gonda in an effort to "offer positive encouragement to her." Manz Decl. ¶ 10.

[17] *See* Smallwood Decl. ¶ 6 ("There was no justification to terminate Ms. Gonda based on her performance, as far as I could see."), Lara Decl. ¶ 5 ("I believe that [Ms. Gonda] did a good job with her work assignments and I saw no indication that she had any performance problems."), Opp'n, Ex. 3 Beverly Carlyle Decl. ¶ 5 ("I believe that [Ms. Gonda] was very knowledgeable and did a good job with her work assignments. I saw no indication that she had any performance problems.").

who is still employed by USPS, stated that his work was "very frequently corrected and edited, for such reasons as formatting, word selection and content." Smallwood Decl. ¶ 8. As a counter to USPS's legitimate and nondiscriminatory reasons, the probative value of Mr. Smallwood's statement is minimal. Although the Complaint alleges that "Ms. Gonda performed at least as well as Eric Smallwood," who is a Hispanic man who was not terminated, Ms. Gonda does not respond to USPS's argument that Mr. Smallwood is not a valid comparator. *See* Mot. for Summ. J. at 12-13. The Court treats the point as conceded. *See Day*, 191 F. Supp. 2d at 159. Multiple USPS supervisors testified that Ms. Gonda's work contained errors, some of them serious, and Ms. Gonda acknowledged it. More critically, she was a highly paid new employee whose performance did not improve over time.

Ms. Gonda also tries to show pretext by arguing that Valentina Lara, who is Hispanic and significantly younger than Ms. Gonda, was a similarly situated probationary OE analyst who made mistakes but was not terminated. USPS responds that Ms. Lara and Ms. Gonda were not similarly situated because Ms. Lara was a Level 21 analyst and Ms. Gonda was a Level 23 analyst and they were, therefore, evaluated using different performance standards.

A common way of showing pretext is to "produce evidence suggesting that the employer treated other employees of a different race . . . more favorably in the same factual circumstances." *Brady*, 520 F.3d at 495. However, in order to show that she was similarly situated to Ms. Lara, Ms. Gonda is "required to demonstrate that all of the relevant aspects of her employment situation were 'nearly identical' to those of [Ms. Lara]." *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). Ms. Gonda has not satisfied her burden of establishing Ms. Lara as a valid comparator in light of their different pay grades,

21

job levels and the fact that Ms. Gonda was a *senior* organization classification and management

analyst while Ms. Lara was not.  *See* Gonda SF-50; Mot. for Summ. J., Ex. 20, Lara Sf-50.

Moreover, the record shows that USPS evaluated Ms. Lara as having better

performance and more potential.  Although Ms. Manz, also Ms. Lara's team lead, gave Ms. Lara

a poor 30-day performance evaluation, she believed that Ms. Lara's performance steadily

improved.  Mot. for Summ. J., Ex. 18; *Id*., Ex. 2, Manz EEOC Testimony at 352 (testifying that

Ms. Lara was retained after probation because there was "improvement overall," "she had been

picking up things that were being taught to her. She was trying very hard. She was very often

making corrections to other people's errors in the system.").  In contrast, Ms. Manz believed that

Ms. Gonda's performance did not improve and that she was not putting forth enough effort.

Manz Decl. ¶ 11.  Only Mses. Gonda and Lara testified to each other's skills.  *See* Lara Decl. ¶ 7

("I believe that Ms. Gonda's performance was as good as mine."); Gonda EEOC Testimony at

121 ("[Ms. Lara] and I performed at about the same level.  . . . [T]here were some things that I

helped her with and she helped me with.  We really performed in some way at about the same

level.  In some areas I was better.").  It is no answer to say that a Level 23 employee performed

as well as a Level 21 employee.  Moreover, employees' subjective beliefs are not proof.  *See*

*Waterhouse*, 124 F. Supp. 2d at 7.

Courts are "reluctan[t] to become involved in the micromanagement of everyday

employment decisions."  *Forman v. Small*, 271 F.3d 285, 291 (D.C. Cir. 2001); *see also*

*Fischbach v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C. Cir. 1996) (A court may not

"second-guess an employer's personnel decision absent [a] demonstrably discriminatory

motive.") (quoting *Milton v. Weinberger*, 696 F.2d 94, 100 (D.C. Cir. 1982).  Here, the evidence

shows that Mses. Hepner and Manz honestly believed that Ms. Gonda's performance was

inadequate and not improving and that she was terminated at the end of her probationary period for these reasons. *Fischbach*, 86 F.3d at 1183 (the issue is "whether the employer honestly believes in the reasons it offers"). Not only did Ms. Gonda fail to address many of the facts on which USPS relies to support its termination decision, her own testimony gives credence to USPS's reasoning by admitting her shortcomings. Ms. Gonda has not offered "sufficient evidence for a reasonable factfinder to reject [USPS]'s nondiscriminatory explanation for its decision," *Reeves*, 530 U.S. at 140, and, instead, to find that USPS's real reason was rooted in age discrimination. The Court also finds that the evidence precludes a finding that Ms. Gonda's age was *a* relevant consideration in her poor performance evaluation and termination. *Ford*, 629 F.3d at 206 ("Plaintiff[] may also prevail by proving that age was *a* factor in the employer's decision."). As discussed above, Mses. Hepner and Manz were responsible for the decision to hire and fire Ms. Gonda, were in the same ADEA-protected class with Ms. Gonda and were not aware of Ms. Gonda's age at any point during her employment with USPS. Further, Ms. Gonda made repeated errors, many of which she acknowledges, and her supervisors believed that she failed to improve. Accordingly, summary judgment will be granted on Count 3.

### B. Count 1: Retaliation Allegations under Title VII

In addition to prohibiting status-based discrimination, Title VII also prohibits retaliation against an employee "because [she] has opposed any practice made an unlawful employment practice by this title, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this title." 42 U.S.C. § 2000e-3(a). The *McDonnell Douglas* burden-shifting framework applies to claims of retaliation. *Geleta v. Gray*, 645 F.3d 408, 410 (D.C. Cir. 2011) (citing *McDonnell Douglas Corp.*, 411 U.S. 792). First, the plaintiff must establish a *prima facie* case of retaliation by

showing that: (1) she engaged in protected activity; (2) she suffered from a materially adverse act; and (3) a causal connection exists between the protected activity and the employer's act. *Holcomb v. Powell*, 433 F.3d 889, 901-02 (D.C. Cir. 2006).

"The casual connection component of the *prima facie* case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). To satisfy the knowledge requirement, a plaintiff must show that the official responsible for the alleged retaliatory act was aware of the protected activity. *Id.* To satisfy the timing requirement, the proximity between the protected activity and the adverse employment action must be "very close." *Moran v. U.S. Capitol Police Bd.*, 887 F. Supp. 2d 23, 35 (D.D.C. 2012) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).[18] Unlike status-based discrimination claims, retaliation claims must be proved according to traditional principles of but-for causation and not the lessened causation test stated in § 2000e-2(m). *Univ. of Texas Sw. Med. Mtr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). "[A] plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534.

"If the plaintiff establishes a prima facie case, the burden shifts to the employer to produce a legitimate, nondiscriminatory reason for its actions. If the employer does so, the

---

[18] Some courts have held that time lags of more than three or four months are too long to show retaliatory causation. *Breeden*, 532 U.S. at 274 (adverse action taken twenty months after protected activity "suggests, by itself, no causality at all") (citing with approval *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (finding three-month time gap insufficient to establish temporal proximity)); *Allen v. Napolitano*, 774 F. Supp. 2d 186, 201 n.2 (D.D.C. 2011) ("very close" means within three to four months); *Gustave-Schmidt v. Chao*, 360 F. Supp. 2d 105, 118-19 (D.D.C. 2004) (adverse action that occurred almost three months after protected activity "pushe[d] the temporal requirement . . . to its outer limit").

burden-shifting framework disappears." *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)

(citations and quotations omitted).  Then, "a court reviewing summary judgment looks to

whether a reasonable jury could infer retaliation from all the evidence, which includes not only

the *prima facie* case but also the evidence the plaintiff offers to attack the employer's proffered

explanation for its action and [plaintiff's] evidence of retaliation."  *Gaujacq v. EDF, Inc.*, 601

F.3d 565, 577 (D.C. Cir. 2010) (quoting *Jones*, 557 F.3d at 677).

   USPS contends that it is entitled to summary judgment on Count 1 because Ms.

Gonda fails to make out a *prima facie* case of retaliation under Title VII,[19] cannot prove her case

according to traditional principles of but-for causation, and fails to show that USPS's proffered

legitimate non-retaliatory reasons for the alleged material adverse actions are pretextual.

Although the Court finds that Ms. Gonda has presented a *prima facie* case for retaliation, the

Court otherwise agrees with USPS.

   Ms. Gonda alleges that she engaged in protected activity on November 9, 2010

during the course of a group meeting with Ms. Hepner, after which time she was given a poor

performance evaluation on December 13, 2010 and terminated on January 3, 2011.[20]  At the

---

[19] USPS does not dispute that Ms. Gonda suffered material adverse actions.

[20] Ms. Gonda avers that she told Ms. Manz about Mr. Hillelson's inappropriate pat on the leg and use of the term "Bubula" in August and told both Ms. Manz and Ms. Hepner that Mr. Oliver assigned men and women different types of assignments in September.  Gonda EEOC Testimony at 37-38, 40. Ms. Manz denies "Ms. Gonda ever informing me that she had been subject to sexually inappropriate or harassing behavior by any OE supervisor."  Manz Decl. ¶ 13. Likewise, Ms. Hepner denied "Ms. Gonda raising any issue of discrimination or disparate treatment by Mr. Oliver" when Ms. Gonda raised concerns about Mr. Oliver's "communication style."  Hepner Decl. ¶ 25.  All parties agree that Ms. Gonda announced these complaints during the November 9, 2010 meeting.  Since "courts should consider later protected activity in determining whether evidence of temporal proximity satisfies the causation element," the Court would begin its analysis of temporal proximity as of November 9, 2010 in any event.  *Hamilton v. Geithner*, 666 F.3d 1344, 1358 (D.C. Cir. 2012).  Because the decision to fire Ms. Gonda was made within a month of the November 9 meeting and carried out in early January, there is

November 9, 2010 meeting, Ms. Gonda complained that Mr. Hilelson patted her on the leg and

called her "Bubula" and that Mr. Oliver treated the female employees differently than the male

employees by assigning them menial tasks.  USPS argues that Ms. Gonda did not engage in

protected activity because she cannot demonstrate she had a "good faith, objectively reasonable

belief that the challenged practice[s] violated Title VII."  *See George v. Leavitt*, 407 F.3d 405,

417 (D.C. Cir. 2007).  Ms. Gonda has repeatedly emphasized that her complaint about Mr.

Oliver was rooted in his disparate treatment of female and male employees.  She also testified

that other women in the OE complained about the type of work Mr. Oliver assigned to female

employees, an observation corroborated by a male employee.  Gonda D.D.C. Dep. at 121.  The

Court finds that Ms. Gonda has shown her reasonable belief that the complained-of work

assignments violated Title VII.[21]  For purposes of summary judgment, Ms. Gonda, the non-

movant, is entitled to all inferences, *see Anderson*, 477 U.S. at 255, and the Court finds that she

engaged in protected conduct at the November 9 staff meeting.

       Nonetheless, Ms. Gonda has failed to demonstrate the existence of a genuine

dispute of material fact as to whether retaliation was the but-for cause of her evaluation and

---

sufficient temporal proximity between the alleged protected activity and the adverse material
actions to establish a *prima facie* causal connection.

[21] While the record reflects that Ms. Gonda believed the leg-pat and "Bubula" comment were
inappropriate, she has not established that she had an objectively reasonable belief that Mr.
Hilelson's conduct violated Title VII.  Although she asserts that "[m]any experts in the field
believe that any touching of a female employee's leg by a male superior would constitute sexual
harassment or gender discrimination," she cites only an article from Oregonlive.com for support.
Opp'n at 7-8; *id.*, Ex. 15.  The article discusses whether the touching of a female employee's leg
or thigh constitutes sexual harassment in light of a Portland, Oregon police chief's view that one
of his officers did not engage in sexual harassment by stroking a subordinate's leg and placing
his hand on her leg and rubbing back and forth.  *Id.*  Not only was Mr. Hilelson's conduct far less
obtrusive than the conduct described in the article, Ms. Gonda acknowledges that she did not
view Mr. Hilelson's conduct as carrying any sexual connotation.  Gonda D.D.C. Dep. at 110-11.

termination.  *Nassar*, 133 S. Ct. at 2533.  Under the but-for standard, it is not sufficient for Ms. Gonda to demonstrate that a reasonable jury could find that retaliatory animus by her supervisor was a cause for the poor performance evaluation and subsequent termination.  Rather, Ms. Gonda must demonstrate that there is a genuine issue of material fact as to whether retaliatory animus was *the* cause for the poor performance evaluation and subsequent termination.  *See Rattigan v. Holder*, 982 F. Supp. 2d 69, 81 (D.D.C. 2013).  Under a "but-for" burden of proof, Ms. Gonda must prove that *no* adverse action would have been taken if she had not complained about work assignments.  Ms. Gonda cannot meet this standard.  The existence of unrebutted facts about Ms. Gonda's unsatisfactory work performance would make it impossible for a jury to conclude that retaliatory animus was the only cause for Ms. Gonda's poor performance evaluation and subsequent discharge.  Ms. Gonda testified that she believed her supervisors were laying the groundwork to fire her after the November 9 meeting because "[a]ll of the sudden after that meeting it was like I could not do anything right."  Gonda EEOC Dep. at 158.  The record, however, contains evidence the Ms. Gonda made mistakes both before[22] and after[23] the November 9 meeting.  Her testimony, without specifics, does not demonstrate pretext in USPS's legitimate and non-retaliatory reason.

---

[22] *See* Mot. for Summ. J., Ex. 9, 9/30/10 Visconti email (noting insufficient analysis in work product); *id.*, Ex. 12, 11/4/10 and 11/5/10 Manz & Oliver email (identifying formatting deficiencies in report prepared by Ms. Gonda), 10/27/10 Manz email (asking Ms. Gonda to "clean up" formatting on report to be sent to internal customer).

[23] *See id.*, Ex. 11, 11/15/10 Gonda email (thanking Ms. Visconti for feedback because she "was afraid there were [sic] going to be an error with this one); *id.*, Ex. 12, 11/15/10 Gonda email (apologizing for an error).

For the reasons stated, the Court concludes that a reasonable jury could not infer retaliation in violation of Title VII from all the evidence. USPS's motion for summary judgment on Count 1 will be granted.

## C. The FLSA Allegations

Ms. Gonda alleges that she was wrongly classified as exempt from FLSA and is therefore owed overtime pay because she regularly worked more than 40 hours in a week. USPS argues that Ms. Gonda was properly classified and asserts defenses based on jurisdiction and statute of limitations. Although the statute of limitations bars some of her claims, the Court concludes that there is a genuine dispute of material facts as to whether Ms. Gonda was properly classified as exempt and will deny summary judgment, in part.

### 1.  Subject Matter Jurisdiction

USPS argues that this Court lacks subject matter jurisdiction over Ms. Gonda's FLSA claim because the Tucker Act vests exclusive jurisdiction in the Court of Federal Claims for non-tort claims in excess of $10,000 against the United States, 28 U.S.C. § 1491(a)(1), and the "Little" Tucker Act vests original jurisdiction in the federal district court of a plaintiff's residence (in addition to the Court of Federal Claims) for claims under $10,000, *id.* §§ 1346(a)(2), 1402(a)(1). Because Ms. Gonda resides in Falls Church, Virginia, *see* Compl. ¶ 6, she may only file in the Court of Federal Claims or in the U.S. District Court for the Eastern District of Virginia if she claims damages under $10,000 or in the Court of Federal Claims if her alleged damages exceed $10,000. Thus, USPS contends that this Court does not have jurisdiction over Ms. Gonda's FLSA claim regardless of its amount. Ms. Gonda responds that "a suit against the U.S. Postal Service is not considered a suit against the United States for purposes

of the Tucker Act," Compl. ¶ 4, and argues that the Postal Reorganization Act of 1970 provides subject matter jurisdiction, Opp'n at 20.

Federal courts are courts of limited jurisdiction and "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "are obliged always to ascertain whether they have subject matter jurisdiction over the litigation before them." *Reynolds v. Sheet Metal Workers, Local 102*, 702 F.2d 221, 223 (D.C. Cir. 1981). The party claiming subject matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008).

Section 401 of the Postal Reorganization Act of 1970 (PRA) permits USPS "to sue and be sued in its official name." 39 U.S.C. § 401(1).[24] Furthermore, Section 409 of the PRA provides that the United States District Courts "shall have original but not exclusive jurisdiction over all actions brought by or against the Postal Service." 39 U.S.C. § 409(a). These provisions of the PRA create a clear grant of jurisdiction to the district courts over suits brought against USPS. *Continental Cablevision v. U.S. Postal Serv.*, 945 F.2d 1434, 1437 (8th Cir. 1991); *Licata v. U.S. Postal Serv.*, 33 F.3d 259, 263 (3d Cir. 1994) ("[A]fter reviewing the language and history of the [PRA], we hold that absent some other statutory bar, section 409(a) grants district courts subject matter jurisdiction over actions to which the Postal Service is a party.").

---

[24] USPS also argues that Ms. Gonda must identify a specific waiver of sovereign immunity to bring her FLSA claim against USPS. However, "[b]y launching the Postal Service into the commercial world, and including a sue-and-be-sued clause in its charter, Congress has cast off the Service's cloak of sovereignty and given it the status of a private commercial enterprise." *Loeffler v. Frank*, 486 U.S. 549, 556 (1988)

USPS implies that an action brought against the Postal Service is a claim against the United States, thus mandating the jurisdictional limitations of the Tucker Act or Little Tucker Act.[25]  This is incorrect.  "[I]t is well settled that a claim brought against the Postal Service in its own name is not a claim against the United States and thus is not governed by the Tucker Act." *Licata v. U.S. Postal Service*, 33 F.3d 259, 263 (3d Cir. 1994); *Cont'l Cablevision of St. Paul, Inc. v. U.S. Postal Service*, 945 F.2d 1434, 1440 (8th Cir. 1991) (finding that action against USPS, a legal entity separate from the United States, is not an action for damages against the United States, so the Tucker Act does not apply); *Arceneaux v. U.S. Postal Serv.*, No. 02-1278, 2003 WL 1936402, at *6 (E.D. La. April 22, 2003) (surveying cases and holding that "the Tucker Act does not apply because the Postal Service is not the United States").  Ms. Gonda brought her FLSA claim against USPS in its own name.  Because USPS is not the United States, the Court concludes that the Tucker Act does not apply and this Court has subject matter jurisdiction over Ms. Gonda's FLSA claims under 39 U.S.C. § 409(a).

    2.  Classification

FLSA requires employers to pay overtime compensation at a rate of one and one-half times their regular rate of pay to employees who work more than forty hours in a workweek unless such employees are exempt under the law, such as being "employed in a bona fide . . . administrative capacity."  29 U.S.C. § 213(a)(1).  Under Department of Labor regulations, an "employee employed in a bona fide administrative capacity" is one (1) who is compensated on a

---

[25] USPS argues that the jurisdictional limit stated in *Abbey v. United States*, 745 F.3d 1363, 1369 (Fed. Cir. 2014)—that the "the Tucker Act applies to a claim against the government under the monetary-damages provision of the FLSA"— applies to USPS employees.  It cites *West v. Potter*, 540 F. Supp. 2d 91 (D.D.C. 2008) as support.  Although the *West* Court held that the Court of Federal Claims had exclusive jurisdiction over plaintiff's breach of contract claim against USPS, the *West* Court did not consider whether USPS was the United States for purposes of assessing jurisdiction.

salary basis at not less than $455 per week, (2) whose "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers," and (3) whose "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).  An employee's primary duty means the "principal, main, major or most important duty" performed.  *Id.* § 541.700(a).  Any exemption must be narrowly construed and "the employer bears the burden of proving that an employee is exempt."  *Jones & Associates, Inc. v. D.C.*, 642 A.2d 130, 133 (D.C. Cir. 1994) (citing *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966)).  "Whether an employee is exempt is determined by the employee's actual work activities, not by the employer's characterization of those activities through a job title or job description."  *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 51 (D.D.C. 2006) (citation omitted).

There is no question that Ms. Gonda's position satisfied the salary test.  It is undisputed that Ms. Gonda earned a salary of $99,000 annually during her time at USPS, well in excess of the $455 per week required for the exemption.  29 C.F.R. § 541.200(a)(1).  However, Ms. Gonda argues that USPS has not met its burden of proving that her actual work activities pertained to administrative functions or involved the exercise of discretion or independent judgment.  She testified that her daily work consisted of menial tasks, such as data entry work. Although she was "hired to come there to work and mak[e] decisions about whether or not a position is classified properly," Ms. Gonda testified that "instead I'm asked to do something like download . . . information to an Excel spreadsheet   . . . and I'm . . . told by a non-exempt employee to fill in the blanks."  Gonda D.D.C. Dep. at 80-81.  She explained that, "[i]t's not work that I'm making an independent judgment on whether or not this number needs to be changed.  I'm being told to change the number.  That's not the same."  *Id.* at 120.  She also stated

she was "asked to import information and download it into a spreadsheet, and . . . asked to go make copies of things" and basically did "data entry work." *Id*. at 86, 107.

USPS primarily cites Ms. Gonda's description of the OE office, Ms. Hepner's generalized description of the work typically done by OE analysts, and Ms. Gonda's LinkedIn Profile. *See* Statement of Facts ¶¶ 9-11. None of these sources establishes what work Ms. Gonda actually performed, as opposed to "the employer's characterization of those activities through a job title or job description." *Hunter*, 453 F. Supp. 2d at 51.

Because there is a genuine dispute of material fact as to whether the administrative exemption applied to Ms. Gonda, summary judgment on Count 4 will be denied.

3. <u>Statute of Limitations</u>

Under FLSA, the statute of limitations period is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). A violation is willful when "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

USPS argues that Ms. Gonda's FLSA claim is subject to a two-year limitations period, thereby barring any claim for overtime worked more than two years before November 1, 2012, when Ms. Gonda filed the Complaint. Despite testifying that she does "not believe that [her position] was intentionally misclassified," Mot. for Summ. J., Ex. 2, Gonda D.D.C. Dep. (Def.) at 92, Ms. Gonda argues that USPS acted with reckless disregard in classifying her as exempt from the FLSA.

There is no evidence on the record to support Ms. Gonda's argument that USPS willfully violated the FLSA. A USPS Order Classification Specialist testified that the

determination of whether a position is classified as exempt and meets the administrative

exemption is made as follows:

> [W]e collect job information from subject matter experts, and we
> evaluate the task, the duties and responsibilities, the particular
> knowledge, skills and abilities that are needed to perform those
> tasks and duties, and some of that information is summarized in a
> job description, but when we make determinations we take into
> consideration all of the information that is gathered during the
> course of the job analysis.

Opp'n, Ex. 18, Adam Taylor Deposition.  USPS prepared a standard job description for the

position Ms. Gonda occupied, a grade level 23 senior organization classification and

management analyst, in September 2008, well before Ms. Gonda was hired.  Mot. for Summ. J.,

Ex. 30 [Dkt. 20-1] Job Description.  The description sets forth the numerous analytical duties of

that position, including

> the identification and resolution of customer human resources
> issues and needs; the definition and development of customer
> organizational, position, and staffing requirements, and the
> development and implementation of organization structure; job
> evaluation; and position management programs in support of
> customer business, operational, and strategic objectives.

*Id.*

Ms. Gonda testified that a USPS attorney, in the course of a presentation on FLSA

classification determinations, commented that a number of people occupying positions with

salaries of $99,000 or less were classified as exempt but were actually performing non-exempt

work and that there was a history of misclassification issues at USPS.  Gonda D.D.C. Dep at 157,

160.  However, the fact that some unspecified positions in an organization as large as USPS may

have been misclassified does not show that USPS acted with knowledge or reckless disregard as

to Ms. Gonda's own job.  In view of USPS's standard practices on determining FLSA

exemptions and the anticipated demands of Ms. Gonda's position, Ms. Gonda has not shown that

if her job were misclassified, it was due to a willful violation of FLSA.  In other words, her

position as formally described might well have been exempt from FLSA, but Ms. Gonda argues

that her actual duties were more mundane.  Her overtime claims are subject to a two-year

limitations period so that all claims for overtime pay prior to November 1, 2010 are barred.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant USPS's Motion for Summary

Judgment [Dkt. 16] as to Counts 1, 2 and 3 and will deny USPS's motion as to Count 4.

Judgment on Counts 1, 2 and 3 will be entered in favor of USPS.  Ms. Gonda's FLSA claims for

overtime pay prior to November 1, 2010 are barred.  A memorializing Order accompanies this

Opinion.


Date: February 11, 2015                        _____/s/_____
                                               ROSEMARY M. COLLYER
                                               United States District Judge